926 So.2d 930 (2005)
Stanley D. WESS a/k/a Stanley Dale Wess, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00180-COA.
Court of Appeals of Mississippi.
October 4, 2005.
Rehearing Denied January 3, 2006.
*931 Edmund J. Phillips, attorney for appellant.
Office of Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. A Leake County jury convicted Stanley D. Wess of burglary of a building, and the trial court sentenced him to seven years in the custody of the Mississippi Department of Corrections. Following his conviction, Wess filed a motion for a new trial or other relief which was summarily overruled by the trial court.
¶ 2. Feeling aggrieved, Wess appeals and asserts the following issues which we recite verbatim: (1) the trial court erred in refusing one of Appellant's proposed jury instructions, (2) the trial court erred in overruling Appellant's objection to the prosecutor's comments during closing arguments, and (3) the trial court erred in admitting Appellant's first confession.
¶ 3. Finding no reversible error, we affirm.

FACTS
¶ 4. George Ellis was the owner of Ellis Auto Repair. The auto repair shop was located behind Ellis's home in Carthage, Mississippi. The shop was an enclosed building with closed windows and locked *932 doors. Ellis kept a wide variety of tools in the building.
¶ 5. Ellis testified that on April 15, 2002, he was awakened around midnight by what sounded like glass breaking. Ellis also testified that he heard the door to his shop being opened. Ellis then got out of bed, peeped out his bedroom window, and saw that the door to his shop was indeed open. After observing the open door, Ellis told his wife to call 911 because he believed that they were being robbed. Ellis then looked out his bedroom window a second time and saw someone coming out of his shop carrying some of Ellis's belongings.
¶ 6. Ellis quickly grabbed his pants, shoes, and a gun. Ellis went out the front of his house and quickly came upon an individual carrying some items that Ellis later identified as items that were stored in his auto repair shop. When the individual saw Ellis, he dropped the items and ran. Ellis chased after the man and got him to stop running by threatening to shoot him. After the man stopped running, Ellis escorted him back to his driveway, where they remained until the police arrived. Ellis identified the man that he ran down and captured as the same man that he saw attempting to carry away items from his shop. Upon the arrival of the police, this man was identified as Stanley D. Wess, the Appellant herein.
¶ 7. A suppression hearing was held on an alleged inculpatory statement made by Wess while in police custody. Mike Williams, deputy for the Leake County Sheriff's Office, testified that after he read Wess his Miranda rights, Wess blurted out, "I was suppose to be catching chickens, but I saw this business and decided I'd take some things." Johnny Nealy, a deputy for the Leake County Sheriff's Office, corroborated Williams's testimony. Deputy Nealy testified that Wess said in a laughing manner that Wess "was supposed to be catching chickens that night, but [Wess] saw the business and decided he would take some things." A third deputy, Deputy Tommy Russell, was present on the scene but was off duty on the day of the trial and could not be located to testify. Deputy Nealy testified that he did not know if Russell was standing there and heard Wess being given the Miranda rights or if Russell was out investigating the scene at that time.
¶ 8. Wess testified that he was not given his Miranda rights. Wess also denied having said anything about catching chickens or taking anything from the shop.
¶ 9. After hearing testimony, the trial court denied the motion to suppress and ruled that the statement was admissible. The judge determined that it was not prejudicial to Wess to allow the matter to go forward without the testimony of Deputy Russell. The judge found Deputy Williams's testimony to be credible and corroborated by the testimony of Deputy Nealy. The judge also found that Wess's statement to the police was unsolicited.
¶ 10. A suppression hearing was also held on a Miranda waiver of rights form signed by Wess and on a written statement given by Wess. Mark Welcher, a criminal investigator for the Leake County Sheriff's Office, testified that he interviewed Wess at the Leake County Correctional Facility and advised Wess of his Miranda rights before the interview. Welcher testified that Wess signed a Miranda waiver of rights form, which Welcher witnessed. Welcher further testified that after signing the waiver, Wess then gave a voluntary statement which Welcher wrote down and Wess initialed. In that statement, Wess said that he quit work catching chickens and was walking home when he saw a business on the road and decided to enter the business through a window. Wess also said that he took a *933 weed eater and some other things from the business. Finally, Wess said that he was caught by "some man" who made him stop and held him until the police arrived.
¶ 11. Investigator Welcher testified that Wess was not promised anything or coerced in any way into making the statement. Welcher also testified that when Wess gave the statement, Wess did not appear to be under the influence of drugs or alcohol, that Wess appeared to know what he was doing, and that Wess indicated that Wess understood his rights. Welcher also testified that Wess never requested an attorney while he was being interviewed.
¶ 12. Wess testified that Welcher read him his Miranda rights after taking the statement. Wess also testified that he told Welcher that he wanted a lawyer present at the time of questioning, but Welcher told him that the statement was off the record. Wess further testified that Welcher sprayed him with mace and by the time he regained his eyesight, Welcher had written the entire statement. Wess said that he never held a conversation with Welcher and that he only initialed the statement because Welcher threatened to mace him a second time. Wess also claimed that Welcher tried to bribe him to help prosecute some drug dealers. Wess also testified that Welcher made claims that he could tamper with evidence. In rebuttal, Welcher denied that any of Wess's allegations were true.
¶ 13. The trial court ruled that Wess's waiver and voluntary statement were admissible. The judge found that Wess was competent to make the statement, that there was no coercion, duress, or promise of reward made in connection with the statement, and that the statement was freely, voluntarily, and intelligently made after Wess waived his Miranda rights.
¶ 14. At trial, Wess took the stand and testified in his own defense. Wess testified that he was riding home with a friend when the friend's car started having transmission problems. Wess stated that he went to Ellis's house looking for help. Wess alleged that the pressure washer, weed eater, and chain saw were already sitting in Ellis's driveway when he arrived at the house. Wess stated that after he knocked on the door of the house, Ellis came out the back door with a gun and shot at him. Wess stated that he was frightened, so he took off running and only stopped running because Ellis threatened to shoot him. Finally, Wess stated that Ellis held him at gunpoint until the police arrived and arrested him. Throughout his testimony, Wess reiterated that witnesses for the prosecution were lying.
¶ 15. During closing argument, defense counsel objected to comments made by the prosecution. The objectionable comments were that in order for the jury to find Wess not guilty, "the jury would have to find that George Ellis, Johnny Nealy, Mike Williams, and Mark Wilcher were all liars, and that every one of them is so vicious and vile that they would come to court and try to make up a story like this and send an innocent man to the penitentiary." The trial court overruled the objection, finding that the comments were an argument and an allowable inference.
¶ 16. Wess was found guilty and given a seven-year sentence in the custody of the Mississippi Department of Corrections. From that conviction and sentence, Wess appeals to this Court.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Failure to Properly Instruct the Jury

¶ 17. Wess argues that the trial court erred in refusing to give proposed jury instruction D-7, which states:

*934 The Court instructs the jury that possession of recently stolen property, alone, is not presumptive proof of guilt of burglary, and the fact that the property testified to have been stolen was at any time soon after its being stolen in the possession of the defendant does not shift the burden of proof to the defendant to explain or account for such possession and would not, alone, warrant the jury finding the defendant guilty because a satisfactory explanation was not given.
Wess contends that the trial court should have given proposed instruction D-7 because it was an instruction on "his theory of the case." In support of his contention, Wess cites Hester v. State, 602 So.2d 869 (Miss.1992) for the proposition that an accused is entitled to have a jury instructed about his theory of the case. Wess maintains that denial of the instruction by the trial court constitutes reversible error.
¶ 18. The State counters that this issue is without merit because the jury was properly instructed on what had to be proved in order to find Wess guilty of burglary of a building. The State maintains that irrespective of the denial of the jury instruction, Wess's argument is still lacking in merit because the court properly gave instructions informing the jury of the elements of the crime of burglary and the State's responsibility to prove those elements beyond a reasonable doubt.
¶ 19. We note that our supreme court has consistently held that unexplained possession of recently stolen property is prima facie, although by no means conclusive, evidence of burglary. Brooks v. State, 695 So.2d 593, 594 (Miss.1997) (citing Weaver v. State, 481 So.2d 832, 834 (Miss.1985)). The Court determined that "under appropriate circumstances, guilt beyond a reasonable doubt may be based upon the possession of recently stolen property." Id. (citing Shields v. State, 702 So.2d 380, 383 (Miss.1997)).
¶ 20. In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Johnson v. State, 823 So.2d 582, 584 (¶ 4) (Miss.Ct. App.2002) (quoting Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)). Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence. Poole v. State, 826 So.2d 1222, 1230 (¶ 27) (Miss.2002) (citing Smith v. State, 802 So.2d 82, 88 (¶ 20) (Miss.2001)).
¶ 21. Accordingly, we find that although proposed jury instruction D-7 may have presented Wess's theory of the case, the trial court properly denied the instruction because it incorrectly stated the law and is fairly covered elsewhere in the instructions. We find that the jury instructions, read as a whole, fairly announced the law of the case and created no injustice.

(2) Prosecutor's Comments During Closing Argument

¶ 22. Wess argues that certain comments made by the prosecution during closing arguments were improper and prejudicial. Wess maintains that the prosecutor's comments appealed to the emotions of the jury. Wess contends that the prosecutor's comment equating acceptance of his defense with the belief that the prosecution witnesses were vicious and vile *935 persons went beyond mere inferences and diminished the fairness of his trial.
¶ 23. The State counters that the record reflects that the prosecutor's comments were based upon testimony and evidence before the jury. The State argues that according to Wess's testimony, the prosecution witnesses had somehow conspired to put an innocent man in jail. The State maintains, and the record reflects, that Wess's testimony was to consistently accuse all the prosecution's witnesses of lying. Therefore, the State argues that the prosecutor's comment during closing argument was based upon Wess's own testimony.
¶ 24. An examination of the record reflects that during closing argument, the prosecutor made the following statement to the jury:
In order for you to go into that jury room and come back with a not guilty verdict, you know what you've go to do? You've got to go back in there and you've got to decide that George Ellis, that Johnny Nealy, that Mike Williams, that Mark Wilcher, every one of them, is a liar. That every one of them is so vicious and vile that they would come to court and try to make up a story like this and send an innocent man to the penitentiary.
¶ 25. Attorneys are given wide latitude during closing arguments. Logan v. State, 773 So.2d 338, 350 (¶ 48) (Miss. 2000) (citing Rushing v. State, 711 So.2d 450, 455 (¶ 15) (Miss.1998)). The trial judge is in the best position for determining the prejudicial effect of an objectionable comment and is therefore vested with the discretion to determine whether the comment is so prejudicial that a mistrial should be declared. Id. (citing Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992)). "The test to determine if an improper comment by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Id. (quoting Dunaway v. State, 551 So.2d 162, 163 (Miss.1989)).
¶ 26. In the case at bar, we find that there is no evidence in the record to support Wess's contention that the prosecution's statement unduly influenced the outcome of the jury's verdict. Similarly, there is no evidence that the comments prevented Wess from receiving a fair trial. We find that although the prosecutor chose to use strong connotations in making a point to the jury, his argument was nevertheless based upon testimony and evidence presented at trial. Accordingly, we find no merit in this issue.

(3) Admittance of Appellant's First Confession

¶ 27. Wess argues that the trial court erred in admitting the first inculpatory statement that he allegedly made while in police custody. Wess contends that the statement should not have been admitted because Deputy Russell did not testify at the suppression hearing. Wess further argues that since he denied having been given his Miranda rights or having made any inculpatory statements, the trial court should have required the prosecution to produce Deputy Russell for the suppression hearing or justify his absence before admitting the alleged confession. Wess maintains that failure by the trial court to adhere to this requirement is in violation of Mississippi law and is reversible error.
¶ 28. The State counters that there was sufficient evidence for determining that the statement allegedly made by Wess was voluntarily made. The State contends that Wess's argument rests on the assumption *936 that Deputy Russell witnessed Wess being read his Miranda rights. The State maintains, and the record reflects, that there is a lack of evidence that Russell was present or had any contact at all with Wess at the time Wess made the statement. In fact, the testimony of Deputy Nealy was that Russell may have been investigating the scene at the time Deputy Williams read Wess his Miranda rights.
¶ 29. The standard for reviewing the admission of a confession is well established: "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." Kircher v. State, 753 So.2d 1017, 1023 (¶ 27) (Miss.1999) (citing Wright v. State, 730 So.2d 1106, 1108(¶ 11) (Miss. 1998)).
¶ 30. The trial judge held a pretrial suppression hearing to determine whether Wess's confessions were voluntarily, knowingly, and freely given. During this hearing, the judge heard testimony from Wess and Deputies Williams and Nealy in regard to the first confession that Wess made on the scene. Both officers testified that the statement was given in their presence, was given after Wess had been read his Miranda rights, and was voluntarily and freely given by Wess without any coercion. The deputies further testified that Wess just blurted out the statement after being read his Miranda rights. Most importantly, Deputy Nealy testified that he did not know if Deputy Russell was there and heard Deputy Williams give Wess his Miranda rights or if Deputy Russell was out investigating the scene. Furthermore, there is nothing in the record to support the assumption that Officer Russell was present at the time Wess made his statement.
¶ 31. Accordingly, we find that the State was not required to produce Deputy Russell at the suppression hearing in order for the trial judge to properly admit Wess's confession. We find that the trial judge did not apply an incorrect legal standard by admitting Wess's confession without the testimony of Deputy Russell. Therefore, we affirm the trial judge's admission of Wess's first confession.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF BURGLARY OF A BUILDING AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.