984 So.2d 996 (2007)
Harold OUSLEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01716-COA.
Court of Appeals of Mississippi.
July 17, 2007.
Rehearing Denied November 27, 2007.
*997 Stephen Nick, Greenville, attorney for appellant.
Office of Attorney General by Jacob Ray, attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
BARNES, J., for the Court.
¶ 1. On July 21, 2004, Harold Ousley was convicted of murder and felon in possession of a deadly weapon following a trial conducted in the Circuit Court of Washington County. The trial court directed a verdict of not guilty on a third count of aggravated assault. Ousley was subsequently sentenced to a term of life for the crime of murder and three years for the crime of felon in possession of a deadly weapon with the sentences to run consecutively in the custody of the Mississippi Department of Corrections. Ousley appeals to this court asserting that (1) his motion for continuance of trial should have been granted, (2) his motion to disqualify the district attorney and appoint a special prosecutor should have been granted, (3) the trial court improperly denied two jury instructions and (4) the trial court erred in granting the State's motion in limine to prohibit the introduction of the mental health records of a witness. We find Ousley's assignments of error to be without merit and affirm his conviction.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In the early morning hours of May 3, 2003, Ramsey Smith and his wife, Selene Jones Smith, went out to celebrate Ramsey's return to Greenville, Mississippi after a long absence. On their way into the "Cool It Lounge" in Greenville, they were approached by Terry "T-Rock" Lumford. Lumford asked Ramsey to give him a ride to the store, but Ramsey refused. An altercation between the two ensued, and Harold "Little Man" Ousley, Selene *998 Smith's cousin, joined in the fight. Ousley pulled out a gun and fired it at the ground near Ms. Smith's feet. Ms. Smith testified that she asked Ousley not to shoot her husband. Ramsey ducked down in front of the hood of a Ford Explorer parked in front of the lounge. Ramsey then lifted up his head, and Ousley shot him in the forehead, eventually causing his death.
¶ 3. Greenville police officers, who were nearby, came on the scene after hearing the shot fired. Ousley was still present at the scene when Officer Bobby Johnson arrived. Although hysterical, Ms. Smith pointed out Ousley as the person who shot Ramsey. Ousley ran from the scene and was chased by Officer Johnson. After several hundred yards, Officer Johnson apprehended Ousley and, in the presence of two other officers, searched his person. During the search, Officer Johnson recovered from Ousley's pants the weapon that was used in the killing of Ramsey Smith.
¶ 4. Ousley was subsequently arrested, and a grand jury indicted him on August 20, 2003 on three counts: murder, felon in possession of a deadly weapon[1] and aggravated assault. Ousley filed a motion to continue on May 4, 2004, which was granted by the trial court. Ousley then filed a motion to disqualify the district attorney and appoint a special prosecutor. A former public defender, Carol White-Richard, worked with Ousley briefly on the current case but was later employed with the district attorney's office for Washington County. Ousley alleged this created a conflict of interest and necessitated the removal of the prosecuting district attorney and replacing her with a specially appointed prosecutor. A separate hearing was held July 19, 2004 on this issue, and the trial court denied the motion.
¶ 5. Ousley's trial in the Circuit Court of Washington County began July 20, 2004. At the start of trial, Ousley verbally requested another continuance from the court stating he wanted to retain new defense counsel. After a heated exchange with the court, Ousley agreed to proceed pro se; however, upon observing the trial judge during voir dire, he requested assistance from formerly appointed counsel throughout the remainder of the trial. At the conclusion of a two-day trial, a unanimous jury verdict convicted Ousley of murder and felon in possession of a deadly weapon. The court directed a verdict of not guilty on the third count of aggravated assault. Ousley was sentenced to a term of life for the murder of Ramsey Smith and three years for felon in possession of a deadly weapon, with the sentences to run consecutively.
¶ 6. On August 5, 2004, Ousley filed an offer of proof with the court, stating that had the trial court allowed him to explore on cross-examination the mental competence of witness Selene Smith, her testimony would have shown evidence of a mental illness. On August 6, 2004, Ousley filed his notice of appeal to the Mississippi Supreme Court in forma pauperis.[2]

*999 ISSUES AND ANALYSIS
I. WHETHER THE TRIAL JUDGE ERRED IN DENYING OUSLEY'S MOTION FOR CONTINUANCE OF TRIAL.
¶ 7. On the morning of the first day of the trial, Ousley appeared before the trial judge with his court-appointed attorneys and requested a continuance of the trial in order that he might hire new defense counsel. While a defendant has the constitutional right under the Sixth Amendment to the United States Constitution to counsel of choice, that right is not absolute. Atterberry v. State, 667 So.2d 622, 629 (Miss.1995). "The denial of a last minute request for a continuance to retain new counsel is within the trial court's discretion." Id. (citing United States v. Silva, 611 F.2d 78, 79 (5th Cir.1980)). This court will not reverse a trial court's decision to deny a motion for continuance unless it appears to have resulted in "manifest injustice." Lyle v. State, 908 So.2d 189, 193-94(¶ 18) (Miss.Ct.App.2005); see Stack v. State, 860 So.2d 687, 691(¶ 7) (Miss.2003). The burden of showing manifest injustice is not satisfied by mere conclusory allegations but by concrete facts that show particular prejudice to the defendant. Id.
¶ 8. Ousley, in his appeal, maintains that because of the court's denial of his motion to disqualify the district attorney, continuance was necessary to retain new counsel. We find this argument unpersuasive. The mere fact Ousley was unsuccessful in his motion to have the district attorney disqualified is not relevant to the matter of obtaining new counsel. Defense counsel even stated during the hearing on the motion to disqualify that the motion was not an attempt to delay prosecution. He represented, "My client is well aware that this will not in any way help him."
¶ 9. We find that the denial of Ousley's motion for a continuance of trial made on the day of trial did not result in manifest injustice, and the trial judge did not abuse his discretion in denying the motion. This issue is without merit.
II. WHETHER THE TRIAL JUDGE ERRED IN DENYING MOTION FOR DISQUALIFICATION OF DISTRICT ATTORNEY AND APPOINTMENT OF SPECIAL PROSECUTOR.
¶ 10. A trial court's findings of fact when considering a motion to disqualify an attorney are reviewed for manifest error. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1220(¶ 50) (Miss. 2001); see Colson v. Johnson, 764 So.2d 438, 439(¶ 4) (Miss.2000) (citing Quick Change Oil & Lubrication Co. v. County Line Place, Inc., 571 So.2d 968, 970 (Miss. 1990)). The manifest error standard applies to the review of findings of fact, and the trial court has broad discretion. Id.
¶ 11. Ousley maintains that the presence of Carol White-Richard in the district attorney's office created a conflict of interest due to the fact White-Richard had met with Ousley and discussed his case in her previous role as public defender. Ousley cites Aldridge v. State, 583 So.2d 203 (Miss.1991), to support his theory that the district attorney in his case should have been disqualified due to the fact that White-Richard never notified him of this possible conflict. In Aldridge, the court stated:
[I]f the State can meet the heavy burden of showing that the accused's confidentiality remained unscathed, then we will not require the district attorney to disqualify himself or his office. This burden, however, is great and is not to be treated lightly by trial courts. The State must show that the assistant district *1000 attorney had absolutely no participation in the case, from the time of withdrawal through adjudication; divulged no confidential information; and notified the other party promptly upon becoming aware of the conflict of interest. Cf. Rule 1.11(a) & (b), Rules Prof. Conduct.
Id. at 205.
¶ 12. Both White-Richard and Ousley admitted that confidential information was shared during their brief attorney-client relationship. In Aldridge, the defendant's attorney in that case worked with the defendant extensively (eleven months) and, unlike the case sub judice, there was no concerted effort to screen the attorney from the case. District Attorney Joyce Chiles and Assistant District Attorneys White-Richard and Tucker Gore, testified under oath that at no time did White-Richard discuss with anyone or participate in the preparation of Ousley's case.
¶ 13. While it is true that White-Richard never notified Ousley directly, this is not what Aldridge requires. The decision merely states that counsel has to notify the other party, who in this case was represented by the public defender's office. Id. at 205. White-Richard gave sufficient notification to the public defender's office of her new position at the district attorney's office as her former co-worker, William LaBarre, testified.
¶ 14. We find that the trial court's denial of Ousley's motion for disqualification of the district attorney and appointment of special counsel was not manifest error.
III. WHETHER THE TRIAL COURT ERRED IN DENYING OUSLEY'S REQUESTED JURY INSTRUCTIONS D-7 AND D-12.
¶ 15. Although Ousley addresses these issues separately in his appellant brief, we will address them together as they pertain to a similar standard of review and legal theories. Ousley maintains the trial court erred when it refused to submit jury instructions D-7 and D-12 to the jury. The standard of our review for the grant or denial of jury instructions is well established. An appellate court, when reviewing a denial of a jury instruction, must consider not only the denied instruction but also all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. Divine v. State, 947 So.2d 1017, 1021(¶ 6) (Miss.Ct.App.2007); see Coleman v. State, 697 So.2d 777, 782 (Miss.1997).
¶ 16. A trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). The refusal to grant a jury instruction that is similar to one already given does not constitute reversible error. Walker v. State, 913 So.2d 198, 234 (¶ 132) (Miss. 2005) (citing Laney v. State, 486 So.2d 1242, 1246 (Miss.1986)). Jury instruction D-7 stated:
The Court instructs the jury that it is the duty of each and every member of the jury in this case to decide the issues presented for yourself, and if, after a careful consideration of all the evidence in the case and the instructions of the Court on the law and free consultation with your fellow jurors, there is any single juror who has reasonable doubt of Harold Ousley's guilt, it is your solemn duty as a juror under oath to stand by your belief, you must never yield your belief simply because every other single member of the jury may disagree with you.
*1001 The trial court judge correctly noted that the essence of Jury Instruction D-7 was contained in the court's instructions to the jurors in Jury Instruction No. 1 and thus was already covered elsewhere. In part, Jury Instruction No. 1 stated:
It is your duty to determine the facts and to determine them from the evidence produced in open court . . . The verdict of the jury must represent the considered judgment of each juror. All twelve jurors must agree before returning a verdict in this case. It is your sworn duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your views and change your opinion, if you become convinced you are wrong, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
We agree with the trial court that the language of Jury Instruction D-7 was redundant and find no error by the trial court's refusing this instruction.
¶ 17. With regard to Ousley's claim regarding Jury Instruction D-12, he asserts error based on Young v. State, 451 So.2d 208 (Miss.1984), that a "defendant is entitled to have an instruction on his theory of the case." Id. at 210; (citing De Silva v. State, 91 Miss. 776, 45 So. 611 (1908)). The case sub judice is distinguished from Young in that the judge denied the instruction in Young simply because the defense had already submitted its allotted number of instructions. The court's concern in that case was that the judge only considered the number of jury instructions and not the substance of the instructions. Id.
¶ 18. In the case before us, the defense's Jury instruction D-12 stated:
The Court instructs the jury that if there are two plausible theories arising out of the evidence in this case, and one tends to prove that Harold Ousley did commit the crime of murder and the other tends to show that Harold Ousley did not commit the aforesaid crime, and if the jury is unable to determine from the evidence which of the two theories is true, the jury must accept that theory most favorable to Harold Ousley and find him not guilty.
The State correctly points out in its brief that this is a standard two-theory circumstantial evidence instruction. The Mississippi Supreme Court has established that two-theory instructions should only be given in cases based entirely on circumstantial evidence. State v. Rogers, 847 So.2d 858, 863(¶ 21) (Miss.2003). Our state supreme court has defined circumstantial evidence as that which, without going directly to prove the existence of a fact, gives rise to a logical inference that such a fact exists. A circumstantial evidence case is one in which there is neither eyewitness testimony nor a confession to the crime. Id. In this case, there is direct eyewitness testimony by Ms. Smith, which eliminates the need for a circumstantial evidence instruction. We find the trial court did not err in denying Jury Instruction D-12.
IV. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE.
¶ 19. Prior to trial, Ousley requested that the clerk of court issue a subpoena duces tecum for the mental health records of Selene Smith, a witness. His intent was to have the trial court *1002 review the records to determine any relevancy. However, the records were not readily available.[3] At trial, the State submitted a motion in limine to suppress the issue of Ms. Smith's mental health stating that the information was irrelevant and could not be used for impeachment.[4] Ms. Smith contacted the mental health facility and requested that the records not be produced; she did not waive her medical privilege. Finding that Ms. Smith had neither made her mental health an issue by making some claim nor waived her privilege, the trial court granted the State's motion in limine.
¶ 20. The standard of review for the admission or exclusion of evidence gives a the trial judge a great deal of discretion as to the relevancy and admissibility of evidence. Unless a judge abuses this discretion so as to be prejudicial to the accused, this Court will not reverse the ruling. Shaw v. State, 915 So.2d 442, 445(¶ 8) (Miss.2005) (citing Jefferson v. State, 818 So.2d 1099, 1104(¶ 6) (Miss. 2002)). In his appellant brief, Ousley asserts that the trial court, in granting the State's motion in limine to suppress the issue of Selene Smith's mental health, denied his right under the Sixth Amendment to the United States Constitution to confront witnesses testifying against him. Specifically, he states that he was unable to challenge the truthfulness of the witness's statements by producing evidence of possible mental infirmity. We find this argument without merit. Counsel for the defendant did conduct cross-examination of Ms. Smith at the trial. As already noted, the trial court discussed the issue of Ms. Smith's mental records with counsel for both parties and determined that her mental records were not relevant to her testimony in this case. Despite being allowed to submit an offer of proof regarding this matter, Ousley has failed to show any prejudice suffered by the exclusion of Ms. Smith's mental health records at trial. We find that the trial court did not abuse its discretion in granting the State's motion in limine.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT ONE, MURDER AND SENTENCE OF A TERM OF LIFE, AND COUNT TWO, POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF A TERM OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH COUNTS ONE AND TWO TO RUN CONSECUTIVELY TO EACH OTHER IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Ousley had been previously convicted of the felony crime of obstruction of justice and burglary of a business on September 12, 1997 in Washington County Circuit Court. He was sentenced to serve two years and seven years, respectively, with the Mississippi Department of Corrections. These charges were brought separately and arose out of separate incidents.
[2] Also on August 6, 2004, Ousley filed a Motion for J.N.O.V., or in the Alternative, a New Trial which was overruled by the trial court August 11, 2004. While Ousley's notice of appeal was filed prematurely under M.R.A.P. Rule 4(e), notice filed before disposition of a post-trial motion is ineffective until entry of the final order disposing of the motion at which time the notice becomes effective. Id. at comment.
[3] A letter dated July 16, 2004 from Phillip Terney, counsel for Delta Community Mental Health Services, was sent to the circuit clerk regarding this request. It stated that Ms. Smith's file was closed in 1988, and the equipment which would allow copying of the microfilm was broken and would not be repaired for a couple of weeks. Therefore, the only way to review the records at that time was on premises.
[4] According to the State, Ms. Smith was only admitted to the mental health for a short period because she was a "slow learner."