KING, C.J.,
for the Court:
¶ 1. A jury sitting in Hinds County found Marvin Berry guilty of possession of cocaine. Berry was sentenced as a habitual offender and received a life sentence without the benefit of parole or early release. Subsequently, Berry filed a motion for a new trial and/or a judgment notwithstanding the verdict. The trial court denied the motion, and Berry has appealed raising the following issues: (1) whether the trial court erred in granting the State’s motion, which prevented any mention of the informant’s identity and/or the informant’s failure to testify, (2) whether the court erred in admitting hearsay testimony of the informant, (3) whether the trial court erred in denying Berry’s motion for a continuance in order to secure new counsel, (4) whether the trial court erred in admitting testimony regarding business records without authentication, (5) whether the State provided sufficient evidence in support of Berry’s habitual offender status, (6) whether the prosecution committed reversible error in the cross-examination of witnesses and/or closing arguments, and (7) whether the prosecution committed reversible error in questioning a witness about inconsistent statements without producing extrinsic evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3 On March 15, 2007, the Hinds County Sheriffs Department organized a drug sting at the Best Value Hotel in Jackson. The sheriffs department, through a confidential informant, arranged to have Berry deliver drugs to the informant at the motel. Berry was arrested for possession of cocaine when he approached the designated hotel room.
¶ 4. During trial, the State first presented testimony from Ricky Barner, one of the arresting officers on the scene the evening of the drug sting. Barner testified that a confidential informant had arranged for Berry to bring drugs to the hotel room, and that once Berry arrived, officers attempted to apprehend him and Berry dropped a prescription pill bottle. Barner testified that he retrieved the prescription pill bottle, which was issued to Berry, and that it contained a rock-like substance. The State then called Chancey Bass, a forensic scientist, who tested the contents of the bottle and testified that the rock-like substance contained cocaine. The State then produced Officers Robert Mahaffey and Kevin Swinney; both testified that they were the only officers within the hotel room when Berry arrived.
¶ 5. Berry testified in his own defense and insisted that he went to the hotel room in order to meet an old girlfriend. Berry’s brother-in-law, Gary Thompson, also testified that Berry was going to see a girlfriend. Thompson claimed he went to the hotel with Berry because he intended to borrow Berry’s vehicle during the visit. Both defense witnesses suggested that there were approximately twenty officers at the hotel, and that the twenty officers physically beat Berry upon his arrival.
¶ 6. The State produced two witnesses in rebuttal. Tammy Gaines, booking lieuten *1057 ant for the Hinds County Detention Facility, testified that Berry’s booking records revealed that Berry had no injuries upon arrival. Officer Barner then took the stand again, and testified that there were only two officers inside the hotel room, and a maximum of six officers outside of the room but within the hotel perimeter.
¶ 7. The jury returned a verdict finding Berry guilty of possession of cocaine. Berry then filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial. The post-trial motions were denied, and the sentencing hearing was scheduled. During the sentencing hearing, the State produced evidence of Berry’s previous convictions, which resulted in Berry being sentenced as a habitual offender.
ANALYSIS
¶ 8. Berry has appealed the trial court’s decision to deny the motion for a judgment notwithstanding the verdict, or in the alternative, a new trial. In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for a judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). As for Berry’s request for a new trial, the inquiry turns to the weight of the evidence. Id. at 844 (¶ 18) (citation omitted). An appellate court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
1. Confidential Informant
¶ 9. During opening statements, the prosecutor objected to any reference to the confidential informant. The State orally moved to preclude the defense from cross-examining the witnesses on the informant’s identity or make any reference as to why the informant was not produced or called by the State to testify. The motion was granted, and Berry claims the trial court erred in granting the motion, because in doing so, the court denied him his constitutional right to confront and cross-examine each witness and his right to present a defense.
¶ 10. We will only reverse a trial court’s ruling on the admission or suppression of evidence if the trial court abused its discretion in making its decision. Culp v. State, 933 So.2d 264, 274 (¶ 26) (Miss.2005). On appeal, this Court should determine whether there was “substantial credible evidence to support the trial court’s findings.” Id.
¶ 11. We have previously held that it was not error for the trial court to determine that revealing the identity of the informant was unnecessary when the informant was not a material witness and not inclined to testify at trial. Peters v. State, 971 So.2d 1289, 1292 (¶8) (Miss.Ct.App.2008). The record does not suggest that the informant was a material witness. A material witness is one who participated in the crime or was an eyewitness to the offense. Breckenridge v. State, 472 So.2d 373, 377 (Miss.1985). The arresting police officers testified that the informant was kept within the bathroom of the hotel room for safety reasons and did not witness any of the events leading to Berry’s arrest. Furthermore, neither the State nor Berry indicated that they would call the informant at trial.
*1058 ¶ 12. Berry claims that the trial court further erred in preventing cross-examination regarding the reasons why the informant was not produced or called by the State to testify. “[A] long line of cases establishes the proposition that the failure of either party in a criminal prosecution to call a witness equally accessible to both is not a proper subject for comment by either.” Doby v. State, 557 So.2d 533, 538-539 (Miss.1990). Holmes v. State, 537 So.2d 882, 885 (Miss.1988); Griffin v. State, 533 So.2d 444, 449 (Miss.1988); Brock v. State, 530 So.2d 146, 154-155 (Miss.1988); and Brown v. State, 200 Miss. 881, 887, 27 So.2d 838, 840 (1946). The record shows Berry was aware of the identity of the informant and considered the informant a girlfriend. Neither party was prevented from calling the informant to testify at trial. Therefore, questioning a witness regarding the failure to call the informant to testify is improper.
¶ 13. Accordingly, this issue is without merit.
2. Hearsay
¶ 14. Berry claims the trial court erred in admitting hearsay evidence. The State called Officer Barner to testify about the events that occurred concerning Berry’s arrest. Barner testified that, “I made a phone call to Mr. Berry. Informed him of what we wanted. He said he’d be there in approximately ten minutes.” Barner subsequently admitted that he did not make the phone call, and that the informant did.
¶ 15. Hearsay is defined as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). Hearsay statements are generally not admissible. However, “[t]o the extent necessary to show why an officer acted as he did, an informant’s tip is admissible.” Jenkins v. State, 993 So.2d 862, 864 (¶ 6) (Miss.Ct.App.2008) (citations omitted). “The admissibility of evidence is largely within the trial court’s discretion, and this Court will not disturb the trial court’s ruling absent a finding that the trial court abused its discretion.” Id.
¶ 16. In Jenkins, the facts were similar to the case at hand. Jenkins was arrested for possession of cocaine based on information that an informant provided to the police. Jenkins, 993 So.2d at 865 (¶ 10). During the trial, the arresting officer testified to the information provided by the informant. This Court held that Jenkins was not arrested, indicted, or convicted based upon the statement made by the informant. Id. Instead, Jenkins was convicted based upon the evidence the officers acquired during their pursuit of Jenkins. Id.
¶ 17. Just as in Jenkins, the arresting officer did testify during Berry’s trial as to the information provided by the informant. During Berry’s trial, the State presented numerous witnesses and various exhibits, including a prescription pill bottle containing cocaine, which was confiscated the evening of Berry’s apprehension. Therefore, Berry was convicted based upon evidence the officers acquired during their pursuit of Berry. Thus, we find that the trial court did not err in admitting the officer’s testimony regarding information obtained by the informant. This issue is without merit.
3. Denial of Continuance
¶ 18. After voir dire, counsel for Berry informed the trial judge that Berry wanted to obtain different counsel. Berry stated his reason to be that his current attorneys had failed to inform him that he was going to be arrested the previous day, during the first day of trial, on another *1059 indictment. The trial judge questioned Berry and his attorneys and determined that his counsel were unaware that Berry was going to be arrested. Berry continued to complain and expressed a general dissatisfaction with his attorneys’s efforts to investigate the case. The trial judge denied Berry’s request for a continuance, and explained to Berry that he could proceed with his current counsel or represent himself. Berry claims the court erred in denying the motion for continuance so that he could secure new counsel of his choice.
¶ 19. “The denial of a last minute request for a continuance to retain new counsel is within the trial court’s discretion.” Ousley v. State, 984 So.2d 996, 999 (¶ 7) (Miss.Ct.App.2007) (citation omitted). “This Court will not reverse a trial court’s decision to deny a motion for continuance unless it appears to have resulted in ‘manifest injustice.’ ” Id. “The burden of showing manifest injustice is not satisfied by mere conclusory allegations but by concrete facts that show particular prejudice to the defendant.” Id. Berry did not provide any information of what his counsel failed to investigate in regard to his defense nor did he show any action, or lack of, that resulted in “manifest injustice.” The trial court judge stated that Berry’s attorneys were competent and very familiar with Berry’s case. Because Berry failed to prove that he suffered any injustice, we find this issue to be without merit.
4. Admission of Evidence
¶ 20. Berry argues that the trial court committed reversible error in admitting into evidence a booking photograph of Berry, not produced during discovery, and in allowing the testimony of Tammy Gaines, a booking lieutenant from the Hinds County Detention Center, to testify to police department records without proper authentication. Berry argues that if the discovery violation was harmless error, the admission of the photograph and Gaines’s testimony was improperly admitted as rebuttal evidence.
a. Discovery Violation
¶21. Berry alleges that once he arrived at the hotel, he walked towards the room and more than twenty officers swarmed around him, brought him to the ground, and began beating and kicking him. In cross-examining Berry, the prosecutor presented Berry’s booking photograph and questioned Berry about whether or not it depicted him on the night of his arrest. Berry’s counsel objected to the prosecutor’s questioning concerning the photograph because the photograph had not been provided in discovery. Berry argues that the State failed to provide the photograph, despite his motion for discovery requesting any physical evidence including, but not limited to, photographs. Berry argues that this action constituted a discovery violation under Uniform Circuit and County Court Rule 9.04.
¶ 22. Rule 9.04 of the Uniform Circuit and County Court provides in part:
A. Subject to the exceptions of subsection “B”, below, the prosecution must disclose to each defendant or to defendant’s attorney, and permit the defendant or defendant’s attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
1. Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness *1060 and the substance of any oral statement made by any such witness;
2. Copy of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant;
3. Copy of the criminal record of the defendant, if proposed to be used to impeach;
4. Any reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert;
5. Any physical evidence and photographs relevant to the case or which may be offered in evidence; and
6. Any exculpatory material concerning the defendant.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to the defense attorney as justice may require.
¶ 28. The Mississippi Supreme Court has repeatedly held that a violation of Rule 9.04 is considered harmless error “unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Wyatt v. City of Pearl, 876 So.2d 281, 284 (¶ 10) (Miss.2004) (citing Payton v. State, 897 So.2d 921, 942 (¶ 67) (Miss.2003)). The trial judge admitted the photograph stating:
Regarding the matter of the objection by the defendant to the photograph, the evidence is that the State was surprised by the testimony relating to the beatings. Impeachment evidence, whether it’s strictly for impeachment, may be withheld — does not have to be produced in discovery. And this is what this was. Even if there were an error in admitting it, which the Court is — is of the opinion that'there was no error in admitting it, it’s harmless because there was substantial evidence of — by the State refuting the defendant’s claims of beating. So this was only a minor part in — in that particular issue.
And the defense counsel cross-examining the defendant brought out that he was not beaten around the face or the head, and this picture was the upper torso. He had a shirt on, so, really, the — in the opinion of the Court, the picture was harmless and was not prejudicial to the defendant.
Because the photograph was introduced during cross-examination of the defendant and only in response to his allegation of beatings, we agree that there is no discovery violation causing a “miscarriage of justice.”
b. Authentication of Records
¶ 24. Berry argues that the trial court erred in admitting the booking attendant Gaines’s testimony without proper authentication of police records. We find, however, that the defense never objected on this basis, and therefore, this issue was not properly preserved for appeal. A contemporaneous objection is required in order to preserve an issue for appeal. Davis v. State, 43 So.3d 1116, 1126 (¶ 35) (Miss.2010).
¶ 25. Procedural bar aside, Gaines testified to records of a regularly conducted business activity. The report is therefore admissible under the business records exception to the hearsay rule, Mississippi Rule of Evidence 803(6). The foundational requirements for admitting evidence under the business records exception are:
(1) the statement is in written or recorded form; (2) the record concerns acts, events, conditions, opinions or diagnoses; (3) the record was made at or near the time of the matter recorded; (4) the source of the information had *1061 personal knowledge of the matter; (5) the record was kept in the course of regular business activity; and (6) it was the regular practice of the business activity to make the record.
Flowers v. State, 773 So.2d 309, 331-32 (¶ 72) (Miss.2000).
¶ 26. The record establishes that Gaines is a shift lieutenant in the booking department of the Hinds County Detention Facility in Raymond. Gaines testified that the records entered into evidence were official records from the department, and that the records were completed during the regular course of booking an individual within the facility. Therefore, the State established all of the foundational requirements necessary to admit into evidence the inspection report under the business records exception to the hearsay rule. In Flowers, the supreme court held that a person who is familiar with the contents, terms and meaning of a form is competent to give testimony regarding the foundational requirements of the business record exception. Id. at 332-33 (¶ 77). Gaines testified that she had more than ten years’ experience in the booking department and that she was familiar with the procedure and process. The trial court judge did not abuse his discretion in admitting Gaines’s testimony and the booking records,
c. Rebuttal Evidence
¶ 27. Berry further argues that the photograph and Gaines’s testimony were improperly admitted as rebuttal evidence. “The determination of whether evidence is properly admitted as rebuttal evidence is within the trial court’s discretion.” Rubenstein v. State, 941 So.2d 735, 771 (¶ 150) (Miss.2006) (citation omitted). The photograph was of Berry wearing a white polo shirt, with no apparent marks or bruising. Berry testified that the photograph was of him, but that he was not sure when the photograph was taken. After Berry testified, the State called Gaines. Gaines testified that the photograph of Berry was taken on the night of his arrest on the instant charges. During Gaines testimony, Gaines testified about Berry’s health screening report, documented by officers the night Berry was taken into custody, which indicated that Berry stated he had no injuries.
¶ 28. The record indicates that the defense introduced testimony of Berry’s claims of a physical altercation, and that both the photograph and the testimony of Gaines were introduced to rebut Berry’s claim that he was beaten upon arriving at the hotel. As to whether the evidence was properly admitted as rebuttal evidence, we find that it was and thus, find no error. Accordingly, this issue is without merit.
5. Habitual Offender Status
¶ 29. At Berry’s sentencing hearing, the State was required to meet the burden of proof in order to sentence Berry as a habitual offender. Mississippi Code Annotated Section 99-19-83 states as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
¶ 30. Berry argues that the State failed to prove his continuous incarceration for more than one year on two separate occa *1062 sions within a state penitentiary. The State provided evidence to support that Berry was incarcerated on two separate convictions, for conspiracy to utter a forgery and armed robbery. Berry concedes that the State proved continuous incarceration for over one year in regard to the conspiracy to utter a forgery conviction.
¶ 31. As for the armed robbery conviction, the State offered records to prove the date that Berry began his incarceration and an offense report documenting that he started a fire while incarcerated. The offense report was dated over a year after Berry’s admittance date, but Berry claims that the State’s evidence is insufficient to prove continuous incarceration. We disagree. Besides the offense report, the record indicates that Berry was convicted of armed robbery, sentenced to serve twenty-five years in the Mississippi Department of Corrections, with twenty-two years suspended, three years to serve in the Hinds County Jail and five years on probation. Pursuant to Mississippi Code Annotated sections 47-5-139 (Rev.2004) and 47-7-3 (Supp.2007), Berry was required to serve three years for his armed robbery conviction because an inmate convicted of armed robbery must serve the mandatory time required for parole eligibility, and an inmate convicted of armed robbery is not eligible for parole unless the inmate is sentenced to a term of more than ten years.[1] Therefore, the State adequately proved that Berry was continuously incarcerated for more than one year on two separate occasions.
¶ 32. As for Berry’s argument that the State failed to meet its burden because Berry was incarcerated within a county jail rather than a state penitentiary, the Mississippi Supreme Court has held this argument to be “utterly absurd.” Huntley v. State, 524 So.2d 572, 574-575 (Miss.1988). “[I]t would be utterly absurd for this Court to reach any other conclusion than that the Legislature intended time spent in a local or county jail to count towards the term of imprisonment provided for in a sentence.” Id.
¶ 33. The State met the burden of proof and the trial court was correct in ruling Berry to be an habitual offender. This issue is without merit.
6. Prosecutor’s Statements on Cross-Examination and Closing Argument
¶ 34. During cross-examination of both Berry and his brother-in-law, Gary Thompson, the prosecutor requested that each witness acknowledge that Berry and the State were presenting contradicting versions of the same event.
¶ 35. The questioning of Berry proceeded as follows:
PROSECUTOR: So every one of those police officers under oath lied, according to you; is that right?
BERRY: Pm not trying to call anybody a liar. I’m just stating what happened.
PROSECUTOR: Okay. Well, let’s put it this way: Either you’re right or they are, right?
BERRY: Right.
¶ 36. The questioning of Thompson then proceeded as follows:
PROSECUTOR: So the police, when they said that there was only two that came out of the room, they’re lying?
*1063 BERRY: They’re lying. It wasn’t no two of them....
¶ 37. The prosecutor further explained during his closing argument, “The bottom line is this: If you vote not guilty, then what you’re saying is those gentlemen are liars.... ”
¶ 38. Berry claims the State committed reversible error in asking the above questions, because the effect was requiring witnesses to call the police officers liars and was misstating the burden of proof during closing argument.
¶ 39. The defense counsel made no objection during the questioning or during closing argument and therefore, this issue was not properly preserved for appeal. Davis v. State, 43 So.3d at 1126 (¶ 35) (Miss.2010). Procedural bar aside, the State did not insist that either party was lying but merely acknowledged that two versions of events were presented to the jury. Therefore, the prosecutor merely informed the jury that they must decide which of the two versions of events they find most credible. This Court has consistently held that it is the responsibility of the jury to weigh and consider conflicting evidence, evaluate the credibility of the witnesses, and determine whose testimony should be believed. Ford v. State, 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999).
¶ 40. As for Berry’s claim about the statements made during closing argument, this Court will review allegations of misconduct to determine “whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Sheppard v. State, 777 So.2d 659, 661 (¶ 7) (Miss.2001). Attorneys are afforded wide latitude in arguing their cases to the jury but are not allowed to employ tactics which are “inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.” Id.
¶ 41. This Court addressed a factually similar situation as to the one presented in this case in Wess v. State, 926 So.2d 930, 935 (¶ 24) (Miss.Ct.App.2005). There the prosecutor made the following statement during closing argument:
In order for you to go into that jury room and come back with a not guilty verdict, you know what you’ve go to do? You’ve got to go back in there and you’ve got to decide that George Ellis, that Johnny Nealy, that Mike Williams, that Mark Wilcher, every one of them, is a liar. That every one of them is so vicious and vile that they would come to court and try to make up a story like this and send an innocent man to the penitentiary.

Id.

¶ 42. In Wess, we held that although the prosecutor chose to use “strong connotations in making a point to the jury, his argument was nevertheless based upon testimony and evidence presented at trial,” and therefore the issue was without merit. Id. at 935 (¶ 26). In this case, Berry and the State provided testimony of two different version of events. The prosecutor’s statements were based on testimony from various police officers and evidence acquired on the evening of the arrest, and then, it merely informed the jury to decide which version to believe. Accordingly, we find this issue to be without merit.
7. Inconsistent Statements
¶ 43. The final issue Berry raises on appeal is in regard to the prosecutor’s cross-examination of his brother-in-law, Thompson. During the cross-examination, the prosecutor questioned Thompson about inconsistent statements regarding the alleged beating Berry suffered. Berry claims that the prosecutor committed re *1064 versible error in questioning Thompson regarding inconsistent statements without introducing proof of the alleged statements.
¶ 44. Again, the defense counsel made no objection based upon this issue during the questioning or during closing argument, and therefore, this issue was not properly preserved for appeal. Davis v. State, 43 So.3d at 1126 (¶ 35) (Miss.2010). Procedural bar aside, an appellate review of the admission or exclusion of evidence is to determine whether the trial court abused its discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936 (¶ 7) (Miss.2002).
¶ 45. The questioning of Thompson proceeded as follows:
PROSECUTOR: And you remember you told us that they steady beat on him for 20 minutes without letting up?
THOMPSON: No, I didn’t tell you that. I told you because you — because we had — we had cleared that before we left out the room. I told you — I said — I didn’t tell you that they constantly beat on him for 20 minutes.
PROSECUTOR: And I think what happened was, if you remember right — do you agree or disagree with this—
THOMPSON: I disagree that they were beating on him 20 minutes constantly.
PROSECUTOR: Okay. And what my— and at first, you admit that you did say that to us, right?
THOMPSON: No, sir. I didn’t — I didn’t admit that. I told you I got — told you they didn’t constantly beat on him 20 minutes. You were trying to get me to say that that’s what I said, but I know I didn’t say that.
PROSECUTOR: I think what happened was — and you can tell me if you agree or disagree with this — that I told you would you expect that this person would have gone to the hospital with these injuries, and that’s when you said, “Well, it really wasn’t a constant beating.” And that’s when you changed and started coming down off of how bad the beating was.
THOMPSON: No, I didn’t.
PROSECUTOR: And then I think also when I went further and said that he didn’t have any injuries, then you said, “Well, maybe it was ten minutes off and on.”
THOMPSON: No, I didn’t. You was trying to confuse me. That’s what you were trying to do to me.
PROSECUTOR: Okay. Am I confusing you now?
THOMPSON: No. You’re not confusing me, but I’m just telling you what you was trying to do, sir.
PROSECUTOR: Okay. But at that time, that’s what you had said earlier, regardless of — you did try to clear whatever you wanted to clear, right?
THOMPSON: I cleared it up. We cleared it up before we left out the room. I told you they was beating— they had him on the ground 15, 20 minutes. They was beating on him and hollering at him and cursing him out and everything, talking about where the drugs at and everything.
¶ 46. The final statement by Thompson is an admission of his prior inconsistent statements, and evidence that the conversation took place. Once a witness explains a prior inconsistent statement by admitting it, the statement cannot be admitted into evidence. Shelton v. State, 728 So.2d 105, 115 (¶47) (Miss.Ct.App.1998). Accordingly, we find this issue without merit.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION *1065 OF COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. Berry was sentenced for armed robbery in the Circuit Court of Hinds County on April 5, 1979. The 1980 session of the Mississippi legislature amended the statute which had not permitted parole to persons who had been convicted of armed robbery and had provided that such prisoners would be eligible for parole after serving ten years. Mississippi Code Annotated 47-7-3(d) (1972) was amended and became effective July 1, 1980.