## HUMPHREYS *v.* STATE.

[In Banc. No. 20920.]

1. WHERE EVIDENCE IS CIRCUMSTANTIAL NO ERROR MUST BE COM-
   MITTED IN EXCLUSION OR ʼADMISSION OF TESTIMONY.

   Where the guilt of an accused in a criminal case must depend
   altogether upon circumstantial evidence, a fair administration
   of justice requires that no error should be committed in the
   exclusion or admission of testimony, especially where the case
   is a close one upon the facts.

2. CRIMINAL LAW. *Statements of defendant's wife out of defendant's
   hearing recognizing guilt held inadmissible.*

   On the trial of a defendant indicted for the larceny of certain
   seed cotton, it was error to permit the officer making the arrest
   to detail a conversation or statements ʼof the ;defendant's wife,
   made out of the hearing of the defendant, tending to recognize or
   confess defendant's guilt.

3. CRIMINAL LAW. *That defendant's wife since his arrest destroyed
   a cotton sack used ʼin transporting cotton held inadmissible.*

   On the trial of one indicted for the larceny of seed cotton, where
   the testimony for the state tended to prove that the cotton was
   transported from a field by mule back, it was error to permit
   the officer making the arrest to testify to circumstances tend-
   ing to show that the defendant's wife, since the arrest, cut up
   into strips or destroyed a large cotton sack theretofore used
   by the defendant in transporting cotton from his field to his
   cotton pen.

APPEAL from circuit court of Marshall county.
HON. CHAS. LEE CRUM, Judge.

Buel Humphreys was convicted of larceny, and he
appeals.

*Lester, G. Fant* and *D. M. Featherston,* for appellant.

*N. T. Currie,* Assistant Attorney-General, for the
state.

STEVENS, J., delivered the opinion of the court.

Appellant was indicted and convicted of the larceny of certain seed cotton, and from the judgment imposing a sentence of two years in the state penitentiary he prosecutes this appeal. The stolen cotton was the joint property of a Mr. Smith, the landlord, and Eddie Jones, a share cropper. On the trial there was testimony tending to prove that Jones, the negro share cropper, had picked and piled in his field some eight hundred pounds of seed cotton. About seven hundred pounds of the cotton disappeared from the field one Friday night in November, 1917. Upon investigation there were evidences of a man's track leading from the pile of cotton in the field some one hundred yards distant in the woods where apparently a mule had been hitched to a tree. Small particles of cotton were scattered along the way. From the point where the mule apparently had been hitched along through the woods to the home and cotton pen of appellant there were further evidences of mule tracks and cotton strewed along the way. Mule tracks showed a split or defect in the mule's hoof, and upon comparison and test the tracks of the mule corresponded with and appeared to be the genuine tracks of the defendant's mule. There is further evidence tending to show that there was a slight rain on Friday night, that some of the cotton in the defendant's cotton pen was stained and thereby showed that the cotton had been raised on clay land, and that the stolen cotton had in fact been cultivated and raised on clay soil. There was no eyewitness to the actual taking of the cotton or the identity of the guilty party. The state's case was proven altogether by circumstances. Appellant and one Mathews used the same barn, but each had his own mule and cotton pen. There is proof tending to show that Jones had gone some distance to a party and did not return until Saturday night. There

is proof tending to show that Mathews, who lived near the defendant and on the same farm, hauled some seed cotton to the gin and market on Saturday. The defendant was a witness in his own behalf, and denied any knowledge of or participation in the theft.

For the state the court granted the general instruction that, if the jury should believe from the evidence beyond a reasonable doubt that the defendant took, stole, and carried away the cotton in question, they should find the defendant guilty as charged. and likewise an instruction that the jury do not have to "know" that the defendant is guilty in order to convict him, but it is sufficient if they "only believe from the evidence in the case beyond a reasonable doubt that he is guilty."

For the defendant there were several instructions upon reasonable doubt and the presumption of innocence, and likewise several instructions making plain to the jury that before they could convict the defendant upon circumstantial evidence they must believe him guilty to the actual exclusion of every other reasonable hypothesis.

The two instructions for the state are assigned for error upon the theory and argument that the jury should have been warned in the state's instructions to apply the circumstantial evidence with caution and require the case to be proved not only beyond every reasonable doubt, but to the actual exclusion of every other reasonable hypothesis. The record further discloses that the constable and deputy sheriff who arrested the defendant was permitted over the defendant's objections to state the following circumstances: That he went to the defendant's home about 9 or 10 o'clock one Saturday morning and placed the defendant under arrest; that at the time the defendant stated that he had not eaten breakfast and there was apparently some delay in leaving the house on that account; that the officer

suggested to the defendant's wife that he desired to search the house on account of cotton stealing; that the wife told him all right, and proceeded to pull up a mattress and exhibit a very large and long cotton sack, and thereupon stated to the officer that this was the cotton sack which her husband used in bringing or conveying cotton from the field to the house. Appellant was then carried to jail and incarcerated. On Sunday morning, while the defendant was in jail, the officer returned to the premises where the cotton was grown and made an original investigation about the tracks, and also applied at the defendant's house for the cotton sack, and on doing so found that the sack had been cut up into strips. There was no showing of any communications between husband and wife since the arrest, and the testimony negatives any participation by the defendant in the destructon of the cotton sack. In detailing the conversation and statements of the wife, when the defndant was first placed under arrest, the officer does not make it positive that the defendant actually heard what the wife had to say or that he was called upon either to affirm or deny her statement that the long cotton sack was the one employed in transporting cotton from the field to the cotton pen, and that this method of transportation by mule back was used instead of one by wagon or other conveyance.

The court on the trial limited the time of counsel's argument to forty minutes on the side. The defendant was represented by two attorneys, and this gave each of defendant's attorneys twenty minutes to argue a felony case based on circumstantial evidence. This action of the court is assigned as error. It is also contended that the verdict is contrary to the law and the evidence, and the proof insufficient to sustain the verdict.

While the testimony, if believed, is sufficient to support a verdict of guilty, the record nevertheless pre-

sents a close case on the facts. It is therefore not only of great concern to the accused in this case, but of great importance to an absolutely fair administration of justice, that no error should be committed by the trial court in the exclusion or admission of testimony, or in stating the applicable law of the case to the jury.

We have reached a conclusion in the case, but not without some difficulty. We shall limit discussion to and decide but one point. Inasmuch as the state's case is made and upheld by circumstantial evidence, it is no stronger than the weakest link in the chain of testimony. It is, as suggested, very important that the minds of the jurors should not be unduly influenced by incompetent testimony. It is not clear from the testimony that appellant heard the full conversation between the officer and appellant's wife at the time the house was first searched and the defendant arrested. It does not appear why or upon what charge or under what authority the arrest was made. Inferentially it appears that the arrest was based upon some other charge or at least upon a mere suspicion of the officer that appellant had something to do wth this cotton stealing. It affirmatively appears that appellant had not at that time been charged with the crime and a full investigation even by the officer had not then been made.

Under these circumstances the officer was permitted to testify that the wife exhibited an extra large cotton sack and admitted that this particular sack was used by them in transporting cotton from the field. He was also permitted to testify that while the defendant was in jail at Holly Springs he went back to the home in search of this sack and found that it had been destroyed. Certainly the defendant had not destroyed it, and inferentially it appears that the wife destroyed the sack and upon the theory that it furnished evidence of the defendant's guilt. Naturally it would be taken b' the jury as an overt act by the wife in recognition of

the defendant's guilt. Now, it must be conceded that the state could not place the wife upon the witness stand, and thereby prove by her directly what was indirectly shown through the officer. This incompetent evidence as a whole operated as a confession by the wife of her husband's guilt. On a close case of the kind under review it very probably had influence with the jury and operated to the defendant's prejudice. We think it is sufficiently damaging to upset the verdict and justify a new trial.

We shall neither discuss nor decide the other points argued.

*Reversed and remanded.*