Mike Weaver appeals from his conviction in the circuit court of Calhoun County of the crime of burglarizing a store.
Because of the prejudicial admission of evidence which had no bearing on the guilt of Weaver, we reverse.
 FACTS
The John M. Hardin Clothing Company, Incorporated, a family corporation located in Derma, and operated by John M. and Betty Hardin, was burglarized on the night of November 10, 1982, by prying open a locked door. Mrs. Hardin estimated $12,000 worth of merchandise had been stolen. Two witnesses saw a blue van parked near the store in the early morning hours of the night of the burglary, one thinking it might have been a Ford.
The grand jury of Calhoun County on January 10, 1983, indicted three men for this burglary: Ronald Vanderviss, Frank Hemphill and Weaver. The record does not enlighten us as to the whereabouts of Hemphill and Vanderviss, except an investigating officer testified Hemphill was in jail in Illinois, and Vanderviss was rumored to be dead.
Mrs. Hardin estimated they recovered perhaps a fifth of the stolen merchandise. Most of the recovered merchandise came from Dickerson's Apparel Store in Nettleton, a retail clothing store owned by Johnny and Gloria Jean Dickerson, and operated by Mrs. Dickerson. The Dickersons had purchased this merchandise from one Billy Hughes of Mooreville. Another portion of the merchandise was recovered from an apartment in Columbus, shared by Hemphill and Vanderviss; and Vanderviss was *Page 834 
wearing a jacket stolen from the store which was recovered.[1]
As to the above items, Mrs. Hardin could positively identify the jacket Vanderviss was wearing as having come from the store because of a small hole she had put in the lining. An irregular polo shirt with a hole underneath the collar, and a striped knit shirt with a spot of ink on it, which were recovered from Dickerson's, were also positively identified as having been taken from their store.
All of the remaining items were of the same size, brand and stock numbers as those missing from their store, but Mrs. Hardin could not positively state they actually were the stolen merchandise.
None of the above merchandise, covering numerous items of clothing, were connected to Weaver in any manner, but were introduced over his objection at trial in eight separate exhibits.
Weaver also objected to two of the exhibits being offered into evidence because they had not been revealed to him pursuant to a pretrial discovery order.
The items missing from Hardin's which were connected to Weaver were introduced in two separate exhibits, Exhibit 1 consisting of a McGregor brand "irregular" sweater, some Levi brand jeans, and polo socks. These were recovered in a search of Weaver's trailer. Mrs. Hardin testified these were of the same brand and type of merchandise which came from her store. The polo socks were of special significance to her because of their color.
Mrs. Hardin positively identified Exhibit 2, a Riggs brand, size 44 sportswear jacket, as having come from their store. She had picked this jacket out for her husband, and she had put a small hole in its lining, just as she had done with the jacket Vanderviss was found wearing. Exhibit 2, the size 44 jacket, was recovered on December 16, 1982, from one Bill Parker, the operator of a service station and beer joint at Mayhew Junction in Lowndes County. Parker testified the jacket had been given to him some time previously to December 16 by Weaver.
 LAW Sufficiency of the Evidence
Weaver argues first there was insufficient evidence to connect him to the crime. The clothing found in his trailer created a suspicion, but no more, because it could not positively be identified as coming from Hardin's store.
The jury issue on his guilt was made, however, by his possession of a stolen jacket taken from the store on November 10, 1982, and giving it to Parker not more — perhaps considerably less — than one month later. It has long been the law in this state that the unexplained possession of recently stolen property is prima facie, although by no means conclusive, evidence of the guilt of the defendant. Huddleston v. State, 220 Miss. 292,70 So.2d 621 (1954); Millette v. State, 167 Miss. 172, 148 So. 788
(1933); Harris v. State, 61 Miss. 304 (1883). Weaver gave no explanation as to how he came into possession of this jacket. He offered no witnesses and he chose not to testify. He had a Constitutional and statutory right not to take the witness stand and not to offer any explanation. Amendment V, U.S. Constitution; Article 3, § 26 Mississippi Constitution, Miss. Code Ann. § 13-1-9 (1972). In so doing, however, this could not remove the prerogative of the jury to infer guilt from what is frequently the only way of ascertaining guilt in such a crime, namely: possession of recently stolen property. Thieves do not ordinarily burglarize and steal in open view of spectators. Such crimes are committed in stealth and when no eyewitnesses are present. Proving the possession of recently stolen property is frequently the only proof available of the accused's guilt.
A person in possession of property recently stolen may have acquired it in a completely innocent manner. If so, presumably he will have no hesitancy, indeed *Page 835 
be eager, to acquaint the authorities precisely how he acquired it. On the other hand, if he stole it, he will just as understandably be reluctant to acquaint the authorities how he got it. Hence, the reason for the rule.
In every circumstantial evidence case, of which this is an example, with no eyewitness to the crime except the perpetrator, conviction must be based upon some compelling circumstance pointing to the guilt of the accused. A circumstance capable of arousing enormous suspicion may have a perfectly valid explanation, but when the one person capable of dispelling this suspicion chooses to offer no explanation whatever, he can hardly blame the inevitable conclusion which will follow in a reasonable fact finder's mind from his choice to keep his mouth shut.
We need to also briefly emphasize that in order for an inference of guilt to arise from possession of stolen property, the theft must have been recent. This word "recent" is of some flexibility, depending upon the circumstances of each case. Weaver likewise meets this test, in having the jacket in his possession in not exceeding one month's time at the most following the burglary. See: Smith v. State, 278 So.2d 408, 410 (Miss. 1973).
 INSTRUCTION S-4
Weaver complains of the following instruction:
 The Court instructs the jury that a presumption of guilt rises from the possession of recently stolen property, provided the proof is sufficient to establish that the property was in fact stolen and that the accused failed to give a reasonable explanation of his possession.
The above instruction should not have stated that a "presumption of guilt" arises from the possession of recently stolen property, although it is very similar to the instruction approved in Robinson v. State, 418 So.2d 749 (Miss. 1982);Hall v. State, 279 So.2d 915 (Miss. 1973); and Fletcher v.State, 168 Miss. 361, 151 So. 477 (1933):
 The Court instructs the jury that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt.
Upon remand, if an instruction of this nature is justified, it should follow the language above. Although this type of instruction was criticized in a dissenting opinion in Robinson,supra, this Court is committed to its soundness in appropriate cases.
 PREJUDICIAL EVIDENCE
We are compelled to reverse this case because of the plethora of evidence admitted which had no relevancy whatever to the guilt of Weaver.
There is not one word of competent testimony in the record connecting Vanderviss or Hemphill with Weaver in any way. Yet the state in two separate exhibits offered proof of the jacket Vanderviss was wearing and the clothes found in the apartment of Vanderviss and Hemphill in Columbus, over the objection of defense counsel.
There is not one word of testimony connecting Weaver with any of the merchandise found at Dickerson's store. There is not one word of testimony connecting Hughes, from whom the Dickersons purchased the merchandise, with Weaver. Yet the state called both Dickerson and his wife as witnesses, each of whom testified at some length concerning the purchase of merchandise from Hughes.[2] Then, by six additional separate exhibits, over the objection of defense counsel, all of the clothing obtained from Dickerson's store was offered into evidence as part of the state's case. It is also significant that the state failed to abide by a discovery order of the court in neglecting to inform defense counsel *Page 836 
that Dickerson was a prospective witness, and neglecting to apprise defense counsel of two of these six exhibits until the day before trial.
By far the major portion of this trial was taken introducing evidence of no relevance whatever to the guilt of Weaver. A simple statement from Mr. or Mrs. Hardin that a substantial portion of their property was recovered was all that was necessary, if the state wanted the jury to know about the recovered property. The manner of the state's presentation in this case could only have operated to prejudice the defendant.
In a case of this nature, it is well to bear in mind the words of this court in Humphreys v. State, 122 Miss. 41, 84 So. 141, 142-143 (1920), speaking through Justice Stevens:
 While the testimony, if believed, is sufficient to support a verdict of guilty, the record nevertheless presents a close case on the facts. It is therefore not only of great concern to the accused in this case, but of great importance to an absolutely fair administration of justice, that no error should be committed by the trial court in the exclusion or admission of testimony, or in stating the applicable law of the case to the jury.
 * * * * * *
 Inasmuch as the state's case is made and upheld by circumstantial evidence, it is no stronger than the weakest link in the chain of testimony. It is, as suggested, very important that the minds of the jurors should not be unduly influenced by incompetent testimony.
 * * * * * *
 On a close case of the kind under review it (the incompetent evidence) very probably had influence with the jury and operated to the defendant's prejudice. We think it sufficiently damaging to upset the verdict and justify a new trial.
See also, McBride v. State, 366 So.2d 666 (Miss. 1979).
Other errors are asigned as to admission of testimony and closing argument of the prosecution, which we need not address. The circuit judge and state's attorneys are well aware of elementary rules of evidence and the appropriate bounds of argument without instruction from this Court.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
[1] Why Vanderviss and Hemphill were not arrested and taken into custody when this stolen property was found in their possession is not revealed in the record.
[2] So far as this record goes, this suspicious person Hughes was never arrested or questioned; he never appeared as a witness.