[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 148 
¶ 1. James Earl Jones was convicted of burglary of a dwelling in the Circuit Court of Lafayette County. Due to his being a habitual offender, he was sentenced to life imprisonment without eligibility for parole or probation in the custody of the Mississippi Department of Corrections. It is from this conviction that he now appeals, alleging that: (1) the trial court erred in denying his motion for a judgment notwithstanding the verdict or, in the alternative, a new trial because the verdict was against the overwhelming weight of the evidence, and (2) the trial court erred in refusing to grant Jones a continuance in order to hire outside counsel and prepare for trial. Finding no error, we affirm.
 FACTS ¶ 2. Eaver Moss and her husband owned, and occasionally occupied, a trailer home situated along Highway 30 in Lafayette County, Mississippi. Although residents of Corinth, Mississippi, they occupied the Lafayette County residence while their daughter was undergoing medical procedures at the North Mississippi Regional Medical Center in Oxford, Mississippi. On or about November 6, 2005, Moss left the Lafayette County trailer to return to her Corinth home. The trailer remained vacant from November 6 through November 14, 2005. When Moss returned on the 14th, she found the window in the door broken, the deadbolt unlocked, and virtually everything in the trailer missing. After informing the Lafayette County Sheriff's Department of the break-in, she and her husband went out to find replacement glass for the door the next day. They passed a local used-furniture store and spotted their dining room chairs on display. They began to search the surrounding area and found their recliner and their "bathtub surround" kit at another used-furniture store.
 ¶ 3. Rayford Cathey, the owner of the first store, indicated Jones came to his store on or about November 12 and sold him some dining room chairs. Cathey re-called that Jones was driving a white Chevrolet truck that contained various items of furniture. Jones told Cathey that he had received the property from a lady at an "abandoned trailer house" located on Highway 30. Harold Judon, the owner of the second store, also purchased items from Jones on November 12. Judon stated that Jones drove a blue or black truck. He was not sure whether Jones was alone.[1]
 ¶ 4. Jones was indicted in February 2006 and, at the time of the indictment, was incarcerated at the Mississippi State Penitentiary on a previous, unrelated conviction. Jones was never formally served his indictment, but when made aware of it *Page 149 
through a detainer on his record, he requested a speedy trial. At the formal arraignment, Jones made a motion for a continuance to allow him time to hire other counsel. The public defender assigned to Jones indicated to the court that he was prepared to try the case within the next two days. The motion for a continuance was denied. Jones then indicated that he desired a bench trial and waived his right to a jury trial. The rationale behind this decision was that Jones wanted to testify on his own behalf, and being aware that his prior convictions would be admitted for impeachment of his testimony in a jury trial, he reasoned that he had a better chance that the judge would be less swayed by those convictions. The following day, April 25, 2006, the trial judge heard the case from the bench.
 ¶ 5. Jones testified at trial that he owned "Jones Small Detail Service" and, as such, had distributed flyers in the Oxford, Mississippi community to generate business. Supposedly in response to the flyers, Nora Mosby called Jones on Friday, November 11, 2005, to ask him to help her move some items of furniture that she wanted to sell.[2] On November 12, Jones said he went to a wooden house located off Highway 30, at the direction of Mosby, that he believed was owned by Charles Mosby, Mosby's brother. He stated she was there with furniture on the porch, and he assisted Mosby and her brother in loading a few pieces of furniture and taking them to the respective furniture stores. Jones indicated that Mosby accompanied him to both stores and handled both the transactions. He also testified that Judon was not present at the second store, only two female employees. The women were never called to testify.
 ¶ 6. No physical evidence or eyewitness statements placed Jones at the trailer where the burglary occurred. However, a witness told police that at some point during the period of the Mosses' absence, there was a white Dodge car at the trailer. Jones's wife, Stella Jones, testified that Jones drove a red Chevrolet truck at the time of the burglary, and she never knew him to drive a white truck or a Dodge vehicle. Jones testified that he never owned a white truck, a blue or black Chevrolet truck, or a white Dodge automobile.
 ¶ 7. After the State rested, the defense moved for a judgment of acquittal as a result of the State's failure to establish a prima facie case and sustain its burden of proof. The judge overruled the motion and, after hearing further evidence and arguments, found Jones guilty of the charges. Jones made a timely motion for acquittal, which was denied. Jones filed a motion for a new trial. At the hearing on the motion for a new trial, James Brassell, an employee at Cathey's store and a life-long friend of Jones, testified that he saw a woman with Jones on the day he brought the furniture to the store.[3] The motion for a new trial was denied.
 ¶ 8. From this conviction, Jones appeals, stating that: (1) the trial court erred in its denial of his motion for a JNOV or, in the alternative, for a new trial, and (2) the trial court erred in refusing to grant a motion for continuance to allow Jones the opportunity to hire new counsel and prepare for trial. *Page 150 
I. Whether the trial court erred in denying Jones's motionfor a JNOV or, in the alternative, for a new trial because theverdict was against the overwhelming weight of theevidence.
 ¶ 9. Jones's first contention is that the State failed to introduce any direct evidence of his involvement in the burglary of the Mosses' home, relying solely on circumstantial evidence. Jones also alleges that the verdict was against the overwhelming weight of the evidence.
 ¶ 10. In a motion for a JNOV, the legal sufficiency of the evidence is challenged. Ivy v. State, 949 So.2d 748,751 (¶ 14) (Miss. 2007). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."Mingo v. State, 944 So.2d 18, 33 (¶ 56) (Miss. 2006). On the other hand, "[a] motion for a new trial, based on the weight of the evidence, will be successful only when the verdict `is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" Miller v. State,983 So.2d 1051, 1054 (¶ 9) (Miss. 2008) (quoting Bush v.State, 895 So.2d 836, 844(1118) (Miss. 2005)).
 ¶ 11. Lack of direct evidence is not fatal to the validity of a conviction. "A conviction may be had on circumstantial evidence alone." Tolbert v. State, 407 So.2d 815, 820
(Miss. 1981). However, if the prosecution bases its case entirely upon circumstantial evidence, it "must prove the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence."Rhodes v. State, 676 So.2d 275, 281 (Miss. 1996). In this case, the primary circumstantial evidence was Jones's possession of the stolen items. "[T]he possession of stolen articles, standing alone, may be sufficient to satisfy the beyond a reasonable doubt standard given sufficiently probative circumstances of possession." Shields v. State,702 So.2d 380, 381 (Miss. 1997). Nevertheless, we must view the "circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession" based on certain factors. Id., at 382. These factors are:
 1. The temporal proximity of the possession to the crime to be inferred;
 2. The number or percentage of the fruits of the crime possessed;
 3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
 4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.
Id. at 383.
 ¶ 12. Jones submits that there was no proof presented as to the date of the burglary; hence, the first factor cannot be satisfied. Moss was absent from the home from November 6th through November 14th, the date she discovered the burglary. "[I]n order for an inference of guilt to arise from possession of stolen property, the theft must have been recent."Weaver v. State, 481 So.2d 832, 835 (Miss. 1985). "This word `recent' is of some flexibility, depending upon the circumstances of each case." Id. To determine whether the possession of the stolen items was recent, we look at whether the interval between the time of the theft and the known possession by the accused is short enough to render it "morally or reasonably certain that there could have been no intermediate change of possession." Rushing v. State,461 So.2d 710, 712 (Miss. 1984). There is undisputed evidence that Jones possessed some of the *Page 151 
stolen items on or about November 12, two days before the burglary was discovered. Whether the burglary occurred on November 6, or sometime later that week, we find that this factor disfavors Jones as it was still a short period of time (six days at most) from the date he possessed the stolen items. The supreme court found that possessing a stolen item less than one month after it was reported stolen was sufficient to meet this inference. Weaver, 481 So.2d at 835.[4] "Under Mississippi law, possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt." Rushing, 461 So.2d at 712. In this case, where Jones possessed the stolen items before the items were discovered stolen, we find that the temporal proximity supports an inference of guilt.
 ¶ 13. As to the second and third factors, Jones submits there can be no inference of guilt since it was proven he only possessed three of the twenty-two items stolen, and he fully disclosed his identity to the furniture store owners.[5] We agree that the third factor does not exhibit a strong inference of guilt in this instance. Of course, since both men knew Jones and had bought items from him in the past, it would have been fruitless to attempt concealment. However, we find that the second factor gives a reasonable inference of guilt based on the following facts. Cathey, in his testimony, stated he observed a baker's rack and various tools (both listed as stolen items) in the back of Jones's truck. While Jones denied there was a baker's rack on his truck, the State did produce evidence, which if believed by the fact-finder, showed that Jones possessed all of the larger items which had been stolen, plus the various tools, which were also on the list of stolen items.
 ¶ 14. Addressing the fourth factor, Jones maintains that he provided a "plausible explanation for his possession of the stolen items." This refers to his statement that he obtained the items through Mosby, and he had no knowledge that they were stolen.[6] He also explained that he owned the tools in his truck, and they were used in his business. The inference of participation in the crime is strongest when a defendant fails to make a credible explanation or makes a clearly false explanation. Brooks v. State, 695 So.2d 593, 595
(Miss. 1997). Here, Jones testified that not only was Mosby with him at both of the used-furniture stores, but she also handled the transactions. This is contradicted by the testimony of both dealers. Cathey said that Jones was alone; Judon stated that he never saw any female with Jones when he came into the store. Jones also gave contradictory testimony when he stated that Judon was not even present at the transaction. While Jones's explanation may have been plausible, standing alone, it loses its credibility when put into context with the other evidence presented.[7] Accepting *Page 152 
as true all evidence favorable to the State, we find that Jones provided no plausible explanation, thereby strengthening the inference of guilt. See O'Neal v. State,840 So.2d 750, 753(1117) (Miss.Ct.App. 2003).
 ¶ 15. Testimony presented at trial places Jones at the scene of the crime during the time period in which the burglary occurred. Jones admitted that he took the items directly from a home on Highway 30 on November 12, which provides another example of the conflicts in the testimony. Cathey testified that Jones told him that he got the items from an "abandoned trailer house." Jones testified that he picked up the items from a wooden house with a porch and later implied that he would be embarrassed to admit to taking anything from a trailer. In any criminal trial, much less a circumstantial-evidence case, the jury, or in this case the judge, "has to put the evidence together like pieces of a jigsaw puzzle, and in the end, view the evidence as a whole."Jones v. State, 918 So.2d 1220, 1226 (¶ 15) (Miss. 2005). As to any conflicts in testimony, any issue of the witness's credibility and the weight accorded to his or her testimony is a matter to be resolved by the trier of fact.Ladnier v. State, 878 So.2d 926, 931 (¶ 16) (Miss. 2004). Since this case was a bench trial, it was the duty of the judge, as the trier of fact, to "solely [determine] the credibility of the witnesses." Beacham v. City ofStarkville Sch. Sys., 984 So.2d 1073, 1075 (¶ 10) (Miss.Ct.App. 2008) (citing City of Jackson v. Lipsey,834 So.2d 687, 691 (¶ 14) (Miss. 2003)). A verdict based on circumstantial evidence will always go undisturbed unless opposed by a "decided preponderance of the evidence," or unless it is based on no evidence whatsoever. Tolbert,407 So.2d at 820 (quoting Johnson v. State, 23 So.2d 499,500 (Miss. 1945)).
 ¶ 16. Based on the analysis of the factors inShields and the evidence presented, we cannot find that the trial court erred in denying Jones's motion for a JNOV or a new trial.
II. Whether the trial court erred in refusing to grantJones a motion for continuance in order to hire outside counseland prepare for trial.
 ¶ 17. Jones claims that it was error for the trial court to deny his motion for a continuance at his arraignment on April 24, 2006, the day prior to the trial. Jones expressed, at that time, a desire to hire private counsel and that he had inadequate time to prepare for trial. "[T]he decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." Ross v.State, 954 So.2d 968, 1007 (¶ 91) (Miss. 2007). To satisfy the burden of showing manifest injustice, the defendant must "show concrete facts that demonstrate the particular prejudice to the defense." Salts v. State,984 So.2d 1050, 1060 (¶ 25) (Miss.Ct.App. 2008) (quoting Stack v.State, 860 So.2d 687, 691-92 (¶ 7) (Miss. 2003)).
 ¶ 18. The indictment against Jones was issued on February 16, 2006, *Page 153 
but it was never formally served on Jones, who was in the custody of the Mississippi Department of Corrections at that time. When Jones attempted to file for certain program classifications, he was notified of the detainer on his record and obtained a "writ writer" to file a request for a speedy trial on the current charge.[8] "The constitutional right to a speedy trial attaches at the time a person is accused, whether at arrest, indictment, or information." Robinson v.State, 920 So.2d 1015, 1018 (¶ 6) (Miss.Ct.App. 2005). As a result of this request, the trial judge met with Jones a few days prior to his arraignment regarding his request and subsequently appointed Jones a public defender — Thomas Levidiotis. Jones was formally arraigned a few days later, and trial was set to begin on the following day. At the arraignment, Jones expressed that: (1) he wanted to obtain private counsel; (2) Levidiotis did not want to try his case; and (3) Levidiotis would not discuss the evidence with him. Levidiotis submitted that when Jones was informed the case would be tried immediately, Jones indicated at that time that he wanted a continuance and expressed his desire to discharge Levidiotis as his attorney. Levidiotis pointed out that Jones would not cooperate with him, especially regarding discovery, but despite those facts, he was prepared to go to trial as soon as possible.
 ¶ 19. In response to Jones's request for a continuance, the trial judge observed that Jones had requested a speedy trial. The trial judge went on to note, we believe correctly, that Jones should have attempted to find private counsel the moment he learned of his indictment. Although the State admitted that Jones was never served the formal indictment, "[t]he primary purpose of an indictment is to provide the defendant with a concise statement of the crime so that he may have a reasonable opportunity to prepare and present a defense to those charges."Burrows v. State, 961 So.2d 701, 705 (¶ 11) (Miss. 2007). Therefore, Jones's argument that he only had one day to obtain counsel and prepare for trial, based on the date of arraignment, is erroneous. Jones was aware of the indictment prior to his arraignment, although we do not know the specific date. However, it was apparently enough time for Jones to write to the trial judge with his request for a speedy trial. Jones had an opportunity, prior to arraignment, to hire outside counsel if he so desired or, alternatively, thoroughly discuss his case and possible witnesses with his attorney, Levidiotis. Based on these facts, we find that the trial court did not err in its denial of Jones's motion for a continuance.
 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTECOUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OFLIFE IMPRISONMENT AS A HABITUAL OFFENDER IN THE CUSTODY OF THEMISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FORPAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL AREASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
[1] Both furniture store owners knew Jones.
[2] Jones implicated Mosby at the time of his arrest. Jones stated at trial that Investigator Scott Mills with the Lafayette County Sheriff's Department told Jones a warrant had been issued for Mosby's arrest, but she could not be located.
[3] Brassell stated that he was at the original trial as a witness, but was never called to testify.
[4] We note that Weaver was reversed solely based on the "plethora of evidence admitted which had no relevancy whatsoever to the guilt of Weaver," not on the issue of the recency of the possession of the stolen item. Weaver,481 So.2d at 835.
[5] Items listed as stolen included: a baker's rack, a television, a stereo, two microwaves, a recliner, four dining room chairs, a bathtub kit, a sewing machine, a coffeepot, an antique percolator, various tools, a camera, a wedding band set, another ring, a .410 shotgun and a pistol.
[6] Mills, the investigator with the Lafayette County Sheriff's Department, verified that Mosby was a suspect as an accomplice, but she was never located after a couple of searches.
[7] No witnesses were presented by Jones to corroborate his claim at trial. At the hearing on the motion for a new trial, Jones called one of Cathey's employees, Brassell, who said that a woman was with Jones that day. He did not, however, testify that he saw the woman complete the transaction. It was also noted by the State, at the motion hearing, that the other witnesses that Jones claimed could verify Mosby's presence at the sale, Judon's two female employees, were never called to testify. The motion hearing was held on February 7, 2007, approximately nine months after the trial, giving Jones adequate time to locate those witnesses and evidence he claims would have exculpated him.
[8] Nothing in the record indicates the date of the request by Jones. *Page 694