ROBERTS, J. for the Court:
¶ 1. William C. Vinzant was convicted of the burglary of his brother’s home and the larceny of his brother’s motor vehicle. The Warren County Circuit Court sentenced him as a habitual offender to life in the custody of the Mississippi Department of Corrections. Vinzant filed a motion for a judgment notwithstanding the verdict (JNOVj or, in the alternative, a new trial, which the circuit court denied. Feeling aggrieved, Vinzant appeals and argues that: (1) Count I of his indictment was defective because it failed to allege an essential element of the crime charged; (2) the circuit court erred in failing to give proper instructions to the jury on an essential element of the crime charged in Count I; (3) there was insufficient evidence to support the verdict on Count II, and the verdict on Count II is also against the overwhelming weight of the evidence; and (4) he received ineffective assistance of counsel. Finding no error, we affirm.
FACTS
¶ 2. On July 2, 2008, Patrick Vinzant and his girlfriend, Kelle Kurtz, went out to eat and returned to his home near Vicksburg, Mississippi, at approximately 8:00 p.m. Patrick testified that he and Kurtz had gone to the restaurant in his new 2008 Chevrolet Tahoe. After he and Kurtz returned home, he had left the keys in the vehicle per his usual practice. Patrick testified that when he leaves home, he usually does not lock the door to his home. When they entered the house, Patrick noticed a loaf of Holsum bread on the kitchen counter. He said that the bright orange packaging of the Holsum bread caught his eye as the bread they usually bought had a brown wrapper. Patrick explained that neither he . nor Kurtz had bought the Hol-sum brand of bread, so he assumed that his teenaged son, Hunter, had purchased the bread.
¶ 3. Sometime between 1:30 and 2:00 a.m., Kurtz testified that she was awakened when car lights shined in the bedroom window. She got up and saw a vehicle leaving the driveway. She woke up Patrick. When Patrick looked out the window, he saw someone backing his Tahoe out of the driveway. Patrick grabbed his rifle and shot out the back window of the Tahoe as it drove away. Patrick then called law enforcement, who later located the vehicle in Edwards, Mississippi, by using the vehicle’s OnStar service.
¶ 4. Deputy John Sanders of the Hinds County Sheriffs Department testified that he received a call from dispatch at 2:34 a.m. on July 3, 2008. Dispatch informed him that a vehicle stolen in Warren County might be in Hinds County on Carters Lane in Edwards, Mississippi. Deputy Sanders and a deputy he was training, James Kelle, went to the area and found a vehicle that matched the description with an occupant in the driver’s seat. Deputy Sanders ordered the driver, who identified himself as William Vinzant, to get out of the vehicle. Vinzant got out and was cuffed by Deputy Sanders and placed in the backseat of his *770 patrol car behind the plexiglass and locked in the car. The two deputies then began an inventory search of the stolen vehicle. Suddenly, they heard a loud noise, and when they turned around they saw Vinzant running down the street after bursting out the back glass of the patrol car and escaping. When Deputy Sanders caught up to Vinzant, a physical altercation ensued after Vinzant struck the deputy in the face and punched him in the chest. Deputy Sanders subdued Vinzant so he could be re-handcuffed.
¶ 5. Later that night, authorities notified Patrick that the Tahoe had been found. Patrick drove to Edwards to retrieve the vehicle. Patrick testified that when he arrived, he noticed part of the Holsum loaf of bread in the Tahoe and part of it on the ground. According to Patrick, authorities also recovered a $100 bill, two $20 bills, and a $10 bill. Vinzant testified that he had $210 in cash on him when he was arrested in Edwards. Patrick testified that the next day, his son, Hunter, informed him that he was missing two $100 bills from his wallet. Patrick’s explanation of how William got the $200 from his son’s wallet was that William unlawfully entered his home after the family was asleep.
¶ 6. Patrick testified that he and his brother were not close and that they did not visit one another. In fact, Patrick said when he found out that Vinzant was living in a shed within 300 yards of Patrick’s home, he took a 12-gauge Benelli shotgun and told Vinzant to move. Further, Patrick testified that there was no relationship, not even of a social nature, between his girlfriend Kurtz and Vinzant because Kurtz felt uncomfortable around Vinzant.
¶ 7. Vinzant’s version of events are very different. He testified that he did not enter Patrick’s home on July 3, 2008. According to Vinzant, he and Kurtz were having a “tryst,” and he came to the house that night to meet her and go riding in the new Tahoe after Patrick went to sleep. However, he said that when he got there, Kurtz was sitting at the dining-room table. According to Vinzant, after he knocked on the window, Kurtz came outside and gave him a piece of cold chicken and half a loaf of bread. Vinzant testified that Kurtz told him she did not want to go riding. However, he said she gave him the keys so he could go for a ride in the new Tahoe. Vinzant testified he panicked and drove away when Patrick shot out the Tahoe’s back window. He further testified that he decided to go visit some friends in Edwards and return the Tahoe later that night. He said he had forgotten that the vehicle had OnStar service.
¶ 8. During the State’s rebuttal, Kurtz testified she never trusted Vinzant. Kurtz denied that she had an intimate affair with Vinzant. Furthermore, Kurtz testified that she did not see Vinzant on the night he took the Tahoe. According to Kurtz, she did not give Vinzant any bread or give him permission to take the Tahoe.
ANALYSIS
I. AND II. ESSENTIAL ELEMENTS OF LARCENY OF A VEHICLE
¶ 9. Since Vinzant’s first two issues involve the failure of the indictment to contain the essential elements of the crime of larceny of a motor vehicle, and the failure of the jury to be instructed on the essential elements of the crime, we will discuss those issues together.
A The Indictment
¶ 10. Vinzant argues that Count I was fatally defective because it failed to charge an essential element of the crime of larceny of a motor vehicle. Specifically, Vin-zant argues that the indictment impermis-sibly failed to state that the vehicle was *771 taken “with intent to either permanently or temporarily convert it or to permanently or temporarily deprive the owner of possession or ownership.” Count I of the indictment reads as follows:
William C. Vinzant on or about July 3, 2008, in the County aforesaid, and within the jurisdiction of this Court[,] did willfully, unlawfully, and feloniously without authority take possession of or take away a 2008 Chevrolet Tahoe, being a motor vehicle belonging to Patrick Vin-zant[,] or knowingly aid and abet in such taking possession or taking away in violation of Mississippi] Code Ann[otated] [s]ec[tion] 97-17-42, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
Section 97-17-42(1) (Supp.2011) provides:
Any person who shall, willfully and without authority, take possession of or take away a motor vehicle of any value belonging to another, with intent to either permanently or temporarily convert it or to permanently or temporarily deprive the owner of possession or ownership, and any person who knowingly shall aid and abet in the taking possession or taking away of the motor vehicle, shall be guilty of a felony and shall be punished by commitment to the Department of Corrections for not more than ten (10) years.
¶ 11. Whether an indictment is fatally defective is a question of law, which the appellate court reviews de novo. Tucker v. State, 47 So.3d 135, 137 (¶ 8) (Miss.2010). The Mississippi Supreme Court has stated:
An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.
Gilmer v. State, 955 So.2d 829, 836-37 (¶ 24) (Miss.2007) (citing Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).
¶ 12. At the outset, we note that Vinzant neither objected to nor challenged the sufficiency of the indictment at trial. In the absence of a timely objection made at trial, a defendant is procedurally barred from asserting the alleged error on appeal. Fleming v. State, 604 So.2d 280, 292 (Miss. 1992). Vinzant urges us to employ the plain-error doctrine and consider the issue under plain error since our supreme court has stated that “[Challenges to the substantive sufficiency of an indictment may not be waived and consequently may be raised for the first time on appeal.” Ross v. State, 954 So.2d 968, 1015 (¶ 126) (Miss. 2007) (citing State v. Berryhill, 703 So.2d 250, 254 (¶ 16) (Miss.1997)).
¶ 13. We have held that section 97-17-42 does not require that the vehicle be taken with an intent to permanently deprive the owner of possession or ownership. In Spearman v. State, 80 So.3d 116 (Miss.Ct.App.2011), this Court addressed the same claim that Vinzant raises for the first time on appeal. Convicted of auto theft, Keith Spearman appealed and argued that the indictment against him was insufficient because it did not specify whether he had been charged with permanently or temporarily taking a truck. Id. at (¶ 10). We held:
[T]he auto-theft statute was amended to clarify that the crime encompasses taking vehicles for any amount of time ... [and that] the length of time of the possession or deprivation need not be charged or proved. So long as the State alleges and proves a person intended to convert or, as charged here, “take pos *772 session of or take away” another’s vehicle for any amount of time, it has met its burden to show auto theft. Therefore, omission of the terms “temporary” and “permanent” do not render the indictment defective because the statute makes clear that any possession or taking — albeit temporary or permanent— suffices to establish auto theft.
Id. at (¶ 21). When an accused willfully, unlawfully, and feloniously takes possession of a motor vehicle, he can only deprive the owner of it temporarily or permanently. Consequently, we cannot conclude a failure to charge such in an indictment is a failure to charge an essential element of the felony crime of motor vehicle theft. As in Spearman, we find the indictment against Vinzant was sufficient despite the lack of specificity regarding whether he was charged with permanently or temporarily depriving his brother of his truck. See also Catchings v. State, 58 So.3d 53, 54 n. 1 (Miss.Ct.App.2011). Therefore, we find that Vinzant’s claimed error in the indictment of the omission of the phrase “with intent to either permanently or temporarily convert it or to permanently or temporarily deprive the owner of possession or ownership” is without merit.

B. Jury Instruction

¶ 14. Vinzant claims the circuit court failed to give proper instructions to the jury on the crime of larceny of a motor vehicle by omitting the same language as discussed above. Specifically, he claims that the prosecution’s jury instruction, which was designated as instruction S-l, did not set out that the crime must be committed “with intent to either permanently or temporarily convert it or to permanently or temporarily deprive the owner of possession or ownership.” Again, this is an argument he failed to make at trial. Instruction S-l states in pertinent part:
The [cjourt instructs the [j]ury that if you unanimously find from the evidence in this case, beyond a reasonable doubt, that the defendant, William Vinzant, on or about July 3, 2008, in Warren County, Mississippi, did:
1. willfully, unlawfully, feloniously, and without authority;
2. take possession of or take away a certain motor vehicle;
3. described as a 2008 Chevrolet Tahoe;
4. the property of Patrick Vinzant. then and in that event, the defendant, William Vinzant, is guilty of motor[-] vehicle theft[,] and it is your sworn duty to so find.
¶ 15. While our supreme court has said that the better practice at trial is for the jury to be instructed with language that tracks the indictment, “if the instruction fails to contain this language, the instruction is not necessarily fatally defective.” Duplantis v. State, 708 So.2d 1327, 1344 (¶ 75) (Miss.1998). In Deal v. State, 589 So.2d 1257, 1259-60 (Miss.1991), the defendant made an argument similar to Vin-zant’s — that the State’s instruction failed to include language that the defendant intended to permanently deprive the victim of his automobile. The supreme court held that the jury instruction contained the word “feloniously,” which means “done with criminal intent.” Id. at 1260. The supreme court stated:
The State’s principal instruction clearly advised the jury that if it believed from all of the evidence beyond a reasonable doubt that defendant willfully and felo-niously took, stole[,] and carried away the property, then he was guilty as charged in the indictment. This instruction placed upon the State its full and proper burden of proof. The instruction concerning a permissible infer *773 ence from possession does not minimize the requirements set forth in the principal instruction. The issue of defendant’s guilt or not was therefore properly submitted to the jury.
Id. (quoting Fogle v. State, 231 Miss. 746, 751, 97 So.2d 645, 647-48 (1957)). Likewise, in Richmond v. State, 751 So.2d 1038 (Miss.1999), a motor-vehicle-theft case, the supreme court rejected an argument similar to the one Vinzant raises. The Richmond court held that the use of the term feloniously in the instruction — which is similar to the one given by the circuit court in this case — was the “linguistic equivalent of ‘done with criminal intent’ thus, the jury had been properly instructed on the elements of motor-vehicle theft. Id. at 1046 (¶ 21).
¶ 16. Therefore, we find that the indictment did charge the crime of theft of a motor vehicle, and the jury was properly instructed. It follows that there is no merit to this issue.
III. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
¶ 17. Vinzant argues that there is insufficient evidence to support his conviction for burglary of a dwelling. Alternatively, Vinzant claims his burglary conviction is against the weight of the evidence.

A. Sufficiency of the Evidence

¶ 18. When reviewing the legal sufficiency of evidence, an appellate court considers the evidence “in the light most favorable to the prosecution.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[,]’ ” an appellate court will uphold the verdict. Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). However, where the evidence “ ‘point[s] in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,’ the proper remedy is for the appellate court to reverse and render.” Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 19. Vinzant contends that because the State presented only circumstantial evidence that he broke into Patrick’s home, his conviction is legally insufficient and against the overwhelming weight of the evidence. However, in an unbroken line of decisions, our supreme court has held that a conviction may be had on circumstantial evidence alone. Tolbert v. State, 407 So.2d 815, 820 (Miss.1981). We have said that the “[l]ack of direct evidence is not fatal to the validity of a conviction.” Jones v. State, 995 So.2d 146, 150 (¶ 11) (Miss.Ct.App.2008).
¶ 20. In Jones, James Earl Jones challenged his conviction for burglary of a dwelling based on the legal sufficiency and weight of the evidence. Id. at 150 (¶ 9). Eaver Moss and her husband owned a trailer in Lafayette County, Mississippi, that they occasionally occupied. Id. at 148 (¶ 2). While Moss was absent from the trailer, it was broken into, and most of its contents were stolen. Id. Moss later spotted some of her belongings at a used-furniture store. Id. The store’s owner indicated that Jones had sold him some dining-room chairs and that Jones “was driving a white Chevrolet truck that contained various items of furniture.” Id. at (¶ 3).
¶ 21. Jones argued that his conviction should not stand because “the State failed to introduce any direct evidence of his involvement in the burglary” and “relied solely on circumstantial evidence.” Id. *774 at 150 (¶ 9). This Court acknowledged that “the primary circumstantial evidence was Jones’s possession of the stolen items.” Id. at (¶ 11). However, this Court noted that “the possession of stolen articles, standing alone, may be sufficient to satisfy the beyond-a-reasonable-doubt standard given sufficiently probative circumstances of possession.” Id. (quoting Shields v. State, 702 So.2d 380, 381 (Miss.1997)). Furthermore, “possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt.” Id. at 151 (¶ 12) (quoting Rushing v. State, 461 So.2d 710, 712 (1984)).
¶ 22. At trial, Jones testified that Nora Mosby had called him and asked him “to help her move some items of furniture that she wanted to sell.” Id. at 149 (¶ 5). Jones explained that he later met Mosby at a house that he believed was owned by her brother. Id. He testified that he assisted Mosby in loading furniture from the house and taking it to local furniture stores for sale. Id. Additionally, he testified that the tools found in his truck, which had been listed as stolen, belonged to him. Id. at 151 (¶ 14). On appeal, Jones maintained that his testimony had provided a “plausible explanation for his possession of the stolen items.” Id. This Court disagreed and pointed to the testimony of the furniture-store owners that Jones had come into their stores alone. Id. Acknowledging the fact-finder’s role in resolving conflicting testimony and evaluating witness credibility, this Court held that Jones’s conviction for burglary of a dwelling was not against the sufficiency or weight of the evidence. Id. at 152 (¶¶ 15-16).
¶ 23. We find that the facts in Jones are similar to the present case. Patrick testified that when he and Kurtz returned from dinner, he noticed a loaf of Holsum bread on the kitchen counter. When Patrick met the police to retrieve the Tahoe, he testified that he noticed bread in the vehicle and on the ground. Patrick further testified that the police recovered a $100 bill, two $20 bills, and a $10 bill from Vinzant and that the next day, Hunter informed him that he was missing two $100 bills from his wallet.
¶ 24. Vinzant testified that he did not enter Patrick’s home on July 3, 2008. According to Vinzant, he went to Patrick’s house at approximately 1:00 a.m. and saw Kurtz sitting inside. Vinzant knocked on the window, and he said Kurtz brought him a piece of chicken and half a loaf of bread. However, Kurtz testified that she never gave Vinzant any bread.
¶ 25. At the time of his arrest, Vinzant was driving Patrick’s Tahoe with a loaf of bread allegedly from Patrick’s home and with money also identified by Patrick as missing from his home. While Vinzant contends that Kurtz gave him the bread and the keys and that the money was his, both Patrick’s and Kurtz’s testimonies contradict Vinzant’s. As this Court stated in Jones, it is the jury’s responsibility as fact-finder to resolve conflicting testimony and evaluate the credibility of witnesses. Clearly, the jury found Kurtz’s and Patrick’s testimonies more credible than Vin-zant’s. Based on the evidence presented at trial there was sufficient evidence to find Vinzant guilty of theft of a motor vehicle. This issue is without merit.

B. Weight of the Evidence

¶ 26. As we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (ci *775 tation omitted). The supreme court has further instructed that when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote, internal citations, and quotations omitted).
¶ 27. For the reasons discussed in our analysis of the sufficiency of the evidence, we conclude that the jury’s verdict is not contrary to the overwhelming weight of the evidence. That is, viewing the evidence in the light most favorable to the jury’s verdict, it would not sanction an unconscionable injustice to allow the jury’s verdict to stand. We find no merit to this issue.
IV. INEFFECTIVE' ASSISTANCE OF COUNSEL
¶ 28. Vinzant’s final argument is that he received ineffective assistance of counsel as a result of his trial attorney’s (1) introduction of Vinzant’s sixteen-year-old conviction for giving false information to a law-enforcement officer and failure to object to the prosecution’s cross-examination regarding the conviction, (2) failure to object to Patrick’s hearsay testimony that Hunter was missing two $100 bills and that Vinzant had a $100 bill, two $20 bills, and a $10 bill in his possession at the time of the arrest, (3) failure to object to improper rebuttal-witness testimony regarding Vin-zant’s reputation for untruthfulness, and (4) failure to request a circumstantial-evidence instruction.
¶ 29. While our supreme court has stated that challenges to the effectiveness of counsel are “more appropriately brought during post-conviction proceedings rather than on direct appeal,” an appellate court may “address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record.” Parker v. State, 30 So.3d 1222,1232 (¶ 36) (Miss.2010) (citations omitted). Because Vinzant raises issues that pertain to strategic matters and decisions by his trial attorney that are not readily apparent from the record, we decline to review Vinzant’s claims of ineffective assistance of counsel on direct appeal. Under the circumstances, we must affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Vinzant may raise his claims in a properly filed motion for post-conviction relief, if he chooses to do so.
¶ 30. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, LARCENY OF A MOTOR VEHICLE, AND COUNT II, BURGLARY OF A DWELLING, AND SENTENCE OF LIFE, FOR EACH COUNT, AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBIL *776 ITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, J.J., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE OPINION.